**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED KNOX, | No. C-11-2596 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| PATRICK R. DONAHOE, Postmaster General, | **(Docket No. 27)** |
| Defendant. _____/ | |

Plaintiff Fred Knox has filed suit against the U.S. Postal Service, asserting various claims for employment discrimination. Currently pending before the Court is the Postal Service's motion to dismiss. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and Mr. Knox, proceeding pro se, the Court hereby **GRANTS** the Postal Service's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In his complaint, Mr. Knox alleges as follows.[1]

Mr. Knox is an employee of the Postal Service. *See* Compl. ¶ I (racial discrimination). Since 1995, he has been subjected to a hostile work environment at the Postal Service facility where he works. *See, e.g.*, Compl. ¶ XIV (racial discrimination). The discrimination started after Mr.

---

[1] At the hearing, defense counsel noted that Mr. Knox had served what appeared to be an amended complaint on the Postal Service but that complaint was never filed with the Court. Because that complaint has never been filed, the Court cannot and will not consider that pleading. This order addresses only the complaint that is on file.

1  Knox complained about injuries he suffered as a result of a Halon gas explosion at the Postal Service
2  facility. *See, e.g.*, Compl. ¶ XIV (racial discrimination).

3  In 2010 and 2011, three specific discriminatory acts took place. First, on March 11, 2010,
4  Mr. Knox asked his supervisors for leave time to address a personal medical matter. His supervisors
5  subjected him to "extreme and extraordinary protests," Compl. ¶ XIV (racial discrimination), but
6  ultimately granted him the leave time. *See* Compl. ¶ XIV (racial discrimination). The Court shall
7  hereinafter refer to this event as the "medical leave incident."

8  Second, on March 17, 2011, the Postal Service demanded that Mr. Knox reimburse it in the
9  amount of $444.46. The reimbursement was for monies that the Postal Service had paid to a
10 California medical plan on behalf of Mr. Knox. *See* Compl. ¶ XVI (racial discrimination). It
11 appears that Mr. Knox had initially signed up for a different plan (the Oregon plan) – a cheaper plan
12 – but only because "the Postal Service failed to fully and adequately disclose . . . the differences
13 between the [two plans]." Compl. ¶ XVII (racial discrimination). The Court shall hereinafter refer
14 to this event as the "health plan incident."

15 Finally, in April 2011, Mr. Knox's supervisors issued "a special order regarding a dress code
16 that [Mr. Knox], and only [Mr. Knox], was to adhere to as an employee of the . . . Postal Service."
17 Compl. ¶ XX (racial discrimination). The Court shall hereinafter refer to this event as the "dress
18 code incident."

19 Based on, *inter alia*, the above allegations, Mr. Knox has asserted the following claims: (1)
20 disparate treatment (based on race, age, and disability); (2) hostile work environment (based on race,
21 age, and disability); (3) retaliation; and (4) denial of veteran's preferences.

## II. DISCUSSION

A. Pre-Filing Review

24 As a preliminary matter, the Court takes judicial notice of the fact that Mr. Knox has
25 previously filed five other lawsuits against the Postal Service. *See generally* Docket No. 35 (Def.'s
26 RJN); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)
27 (taking judicial notice of briefs filed in a different case, as well as the transcript for a hearing in that
28 case, to determine whether there was issue preclusion). In each of these cases, Mr. Knox also

claimed employment discrimination and retaliation and the case reached a final judgment. In the fourth lawsuit ("*Knox IV*"), the presiding judge – District Judge Maxine M. Chesney – issued an order which declared Mr. Knox a vexatious litigant and which precluded him from filing, without prior permission from the Court,

> any future complaints regarding his employment with the United States Postal Service from May 1994 to January 16, 2003, the date [*Knox IV*] was filed, including but not limited to:
>
> (a) any claims arising from the May 1995 Halon explosion;
>
> . . .
>
> (d) any claims that [the Postal Service] did not promote him because of his race;
>
> (e) any claims that [the Postal Service] did not train [him] because of his race; [and]
>
> (f) any claims that [the Postal Service] retaliated against [him] . . . .

*Knox IV*, No. C-03-0229 MMC, Docket No. 47 (Order at 19-20). Judge Chesney further instructed:

> Should [Mr.] Knox wish to file such a complaint in the future, he must file a motion for leave to file the complaint, accompanied by a copy of his proposed complaint, a copy of this order, and a declaration under penalty of perjury explaining why [Mr.] Knox believes he has a meritorious claim that has not previously been adjudicated. [The Court will then] decide whether the case should proceed.

*Knox IV*, No. C-03-0229 MMC, Docket No. 47 (Order at 20).

In the current case, it appears that Mr. Knox's claims of employment discrimination are based – at least in part – on events related to the Halon gas explosion in 1995. For example, Mr. Knox alleges in the complaint that the discriminatory acts in 2010 and 2011 were "in furtherance of the maintenance of an abusive and hostile work environment that [he] has been subjected to since 1995 when [he] began to complaint about injuries suffered as a result of a Halon gas explosion." Compl. ¶ XIV (racial discrimination). Moreover, at the hearing, Mr. Knox confirmed upon questioning by the Court that his complaint encompasses the alleged discrimination starting back in 1995.

Given these circumstances, the Court finds that the current case is subject to the pre-filing

3

review requirement imposed by Judge Chesney. The Court further finds, pursuant to this pre-filing review, that Mr. Knox has failed to follow the specific procedure laid out by Judge Chesney. Accordingly, for that reason alone, the Postal Service's motion to dismiss has merit and is granted.

To the extent Mr. Knox argues that Judge Chesney's order requiring the pre-filing review violates his First Amendment and/or due process rights, the Court does not agree. First, the order does not deprive Mr. Knox of his right to petition a court for relief because "the courthouse doors are not closed" to Mr. Knox as a result of the order. *Wolfe v. George*, 486 F.3d 1120, 1225 (9th Cir. 2007). Rather, the order simply subjects Mr. Knox to a pre-filing review. Such reviews are permissible to prevent frivolous litigation. As the Ninth Circuit has noted, "there is no constitutional right to file frivolous litigation. Just as false statements are not immunized by the First Amendment right to freedom of speech, . . . baseless litigation is not immunized by the First Amendment right to petition.'" *Id.* Furthermore, Judge Chesney's order is very limited in scope. Mr. Knox is barred only from bringing claims that he has already brought in his first four lawsuits against the Postal Service. *See O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (stating that "the order must be narrowly tailored to remedy only the plaintiff's particular abuses").

Second, there is no violation of Mr. Knox's right to due process as a result of Judge Chesney's order. Due process essentially requires that a person be given "an opportunity to be heard at a meaningful time and in a meaningful manner." *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 984 (9th Cir. 1998). Judge Chesney afforded Mr. Knox an opportunity to be heard before imposing the filing restriction in *Knox IV*. Moreover, Judge Chesney's order by its very terms gives Mr. Knox an opportunity to be heard in connection with future filings. The situation here is far different from that in *De Long v. Hennessey*, 912 F.2d 1144 (9th Cir. 1999), where the Ninth Circuit found due process requirements were not met where the petitioner was not given the opportunity to oppose the pre-filing order before it was entered. *See id.* at 1147.

Finally, the Court notes that, even if the instant case were not subject to a pre-filing review, Mr. Knox would fare no better because (1) part of his claims are barred by the doctrine of res judicata (claim preclusion) and (2) those claims that are not so barred fail to state a claim for relief.

4

1  Each of these issues is addressed below.

2  B.      Res Judicata

3         Under the doctrine of res judicata, "'[a] final judgment on the merits of the action precludes
4  the parties or their privies from re-litigating issues that were or could have been raised in that
5  action.'" *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998). Underlying the doctrine is the
6  recognition that a plaintiff's interests in a full and fair opportunity to be heard must be considered
7  against the respect for a defendant's efforts and expense in defending itself. *See Marin v. HEW,*
8  *Heath Care Fin. Agency*, 769 F.2d 590, 594 (9th Cir. 1985) (noting that "the purpose of res
9  judicata . . . is to 'relieve parties of the cost and vexation of multiple law suits, conserve judicial
10 resources and, by preventing inconsistent decisions, encourage reliance on adjudication'"). In
11 addition to private interests, res judicata also serves important public interests including finality of
12 judgments, avoiding inconsistent results, and preserving judicial economy. *See Clements v. Airport*
13 *Auth. of Washow County*, 69 F.3d 321, 330 (9th Cir. 1995).

14        In the instant case, the Postal Service argues that Mr. Knox's first four lawsuits against the
15 Postal Service – each of which reached a final judgment – serve as a bar to the instant lawsuit based
16 on principles of res judicata. The Court agrees but only in part.

17        Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the
18 merits; and (3) identity or privity between the parties. *See Hells Canyon Preservation Council v.*
19 *U.S. Forest Service*, 403 F.3d 683, 686 (9th Cir. 2005); *see also Owens v. Kaiser Found. Health*
20 *Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001). Here, there is no real dispute that the second and third
21 factors have been met. In *Knox I* through *IV*, Mr. Knox sued the same defendant – *i.e.*, his
22 employer, the Postal Service. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940)
23 (noting that there is "privity" between officers of the same government, so that judgment in a suit
24 between a party and a representative of an agency is "res judicata" in relitigation of the same issue
25 between the party and another officer). Furthermore, in each case, a final judgment on the merits
26 was obtained: *Knox I*, *II*, and *III* were disposed of on summary judgment; *Knox IV* was dismissed on
27 res judicata grounds.

28

This leaves only the first factor, *i.e.*, identity of claims. The Ninth Circuit has cited several criteria for determining whether two successive lawsuits involve an identity of claims and are thus barred by res judicata: "1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, 2) whether substantially the same evidence is presented in the two actions, 3) whether the two suits involve infringement of the same right, and 4) whether the two suits arise out of the same transactional nucleus of facts." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). The most important factor for determining whether the two suits have an identity of claims is whether the two suits arise from the same transactional nucleus of facts. *See id.* at 1202; *see also Hells Canyon*, 403 F.3d at 690. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992).

Here, there is a significant overlap in operative facts between *Knox I-IV* and the current lawsuit. As noted above, Mr. Knox claims that his current lawsuit is based on the discrimination that he has suffered since 1995 (*i.e.*, after he complained about injuries suffered as a result of the Halon explosion). *Knox I-IV* are also based on alleged discrimination starting in 1995. Therefore, there is an identity of claims between the current lawsuit and the prior lawsuits, at least with respect to the period 1995 to 2003 (when *Knox IV* was filed and ultimately dismissed).

There is, however, one significant difference between the prior lawsuit and the current one. That is, the current lawsuit implicates events that took place *after* 2003. As discussed above, Mr. Knox points to three specific events that took place in 2010 and 2011 – *i.e.*, the medical leave incident, the health plan incident, and the dress code incident. To the extent Mr. Knox's claims are based solely on these three events, there can be no preclusion. "[W]hile a previous judgment may preclude litigation of claims that arose 'prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000); *see also United States v. Liquidators of European Federal Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011) (noting that, "[i]f the harm arose at the same time, then there was no reason why the plaintiff could not have

6

brought the claim in the first action" as "[t]he plaintiff simply could have added a claim to the complaint"; but, "[i]f the harm arose from different facts at a different time, . . . then the plaintiff could not have brought the claim in the first action"). *See, e.g.*, *Beaver v. Washington*, 348 Fed. Appx. 235, 236-37 (9th Cir. 2009) (holding that res judicata did not bar the plaintiff from litigating his claim because he could not have previously asserted a claim where it concerned events that took place after the previous action); *Harkins Amusement Enterprises, Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir. 1989) (indicating that additional antitrust violations occurring after the prior action gave rise to a new claim).

Accordingly, the current claims for employment discrimination are precluded only to the extent they are based solely on events that took place on or before the date of dismissal of *Knox IV*, *i.e.*, October 21, 2003. *See Knox IV*, No. C-03-0229 MMC (Docket No. 43) (order). To the extent the current claim is based largely on earlier events covered by the prior lawsuit, it is barred by res judicata.

C.   Failure to State a Claim for Relief

To the extent this instant lawsuit is based solely on the events that took place in 2010 and 2011 (are thus not barred by res judicata), these remaining claims cannot withstand the Postal Service's motion to dismiss because, as a matter of law, each fails to state a claim for relief.

1.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

   2. <u>Disparate Treatment (Race, Age, or Disability)</u>

In his complaint, Mr. Knox claims that he was discriminated against on the basis of his race, age, and/or disability when (1) his supervisors gave him a difficult time before granting him leave time to deal with a medical matter (*i.e.*, the medical leave incident), (2) the Postal Service demanded a reimbursement for a health plan payment that it made on his behalf (*i.e.*, the health plan incident), and (3) his supervisors issued a special order regarding a dress code that only he had to follow (*i.e.*, the dress code incident). These claims may be considered either disparate treatment claims or hostile work environment claims. The Court addresses the claims first as disparate treatment claims.

In a disparate treatment claim – whether the basis is race, age, or disability – a plaintiff must establish, among other things, that he was subjected to an adverse employment action and that circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Lopez v. Pacific Maritime Ass'n.*, 657 F.3d 762, 764 (9th Cir. 2011) (disparate treatment in the context of the ADA); *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008) (disparate treatment in the context of ADEA case); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (disparate treatment in the context of Title VII case). In the instant case, Mr. Knox has not adequately pled a claim for disparate treatment for two reasons: (1) as a matter of law, none of the employer conduct identified by Mr. Knox constitutes an adverse employment action and (2) there are insufficient allegations indicating that the employer conduct was motivated by a discriminatory intent.

   a. <u>Adverse Employment Action</u>

An "adverse employment action" is one which affects the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Examples of adverse employment actions that the Ninth Circuit has recognized include termination, *see Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002); assignment of more

1  burdensome work responsibilities, *see Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir.
2  2000); and forcible relocation of an employee's work space which changes the employee's working
3  conditions. *See Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1125-26 (9th Cir. 2000).
4       In the present case Plaintiff has failed to plead sufficient facts to establish that any of the
5  three discrete acts alleged constitutes an adverse employment action:
6  (1)     With respect to the medical leave incident, the Postal Service's conduct did not constitute an
7  adverse employment action because, ultimately, Mr. Knox was given the medical leave time. The
8  situation here is not comparable to *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840
9  (9th Cir. 2004), where the plaintiff was forced to use a grievance procedure to obtain relief. *See id.*
10 at 848 (finding adverse employment action "when an employer knows its employees are entitled to
11 certain opportunities, but forces only employees of a certain race to use the grievance procedure to
12 obtain them").
13 (2)     As for the health plan incident, it is not clear how there could be an adverse employment
14 action because, even if the Postal Service failed to fully and adequately disclose the differences
15 between the California and Oregon plans, in the end all that the Postal Service was doing was asking
16 Mr. Knox to pay for the health plan that *he* wanted (*i.e.*, the California plan). Mr. Knox does not
17 make any allegation that he was denied any medical benefits as a result of the Postal Service's
18 actions.
19 (3)     Finally, regarding the dress code incident, Mr. Knox has failed to show that the Postal
20 Service's special order regarding a dress code affected his compensation, terms, conditions, or
21 privileges of employment. Mr. Knox has not made any allegations, for example, that the special
22 order affected his ability to perform his job or demeaned or embarrassed him by imposition, *e.g.*, of
23 a stereotype. *Compare, e.g.*, *Chuang,* 225 F.3d 1115, 1125-26 (9th Cir. 2000) (concluding that the
24 forcible relocation of plaintiffs' laboratory space "unquestionably qualifies as an adverse
25 employment action" because the relocation "disrupted important, ongoing research projects" and
26 "[d]ue to the delay, experimental subjects were lost and research grants were withheld" and some
27 grants were event lost which affected plaintiffs' salary; further, "[d]uring the move, fragile,
28 expensive equipment was damaged and misplaced" and, ultimately, plaintiffs were moved to a new

location that was "totally inadequate for their ongoing research" such that members of the research team "quit because of the change in working conditions"). *See also Carroll v. Talman Fed. Sav. & Loan Ass'n of Chicago*, 604 F.2d 1028, 1034-33 (7th Cir. 1979) (holding that a company's dress policy was discriminatory where it required female employees to wear a specific uniform, whereas male employees in the same position and performing the same functions were not required to do so; the court noted that the dress code was "demeaning to women" because when "some employees are uniformed and others not there is a natural tendency to assume that the uniformed women have a lesser professional status" than their male counterparts; additionally the court rejected the employer's justifications for the policy because they were based on "offensive stereotypes" about women). To the extent Mr. Knox suggests that the dress code incident constituted harassment, the Court addresses that claim (*i.e.*, for a hostile work environment) below.

Because, as a matter of law, none of the Postal Service's three actions constitute an adverse employment action, the Court dismisses the disparate treatment claims with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that, "in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts'").

### b. Discriminatory Intent

In his complaint, Mr. Knox alleges that the Postal Service treated him poorly – by giving him a hard time about the medical leave time, by demanding reimbursement for the health plan payment, and by imposing a dress code requirement – because of his race, his age, and/or his disability. *See, e.g.*, Compl. ¶¶ XV, XIX, XXII (racial discrimination). However, he alleges nothing more.

These allegations are insufficient to establish that the Postal Service acted with a discriminatory intent because they are simply conclusory allegations. As noted above, while "a complaint need not contain detailed factual allegations . . . it must plead '*enough facts to state a claim to relief that is plausible on its face*.'" *Cousins*, 568 F.3d at 1067 (emphasis). Here, Mr. Knox has not alleged any facts to make the claim of discrimination plausible. For example, he has not made any claim that similarly situated persons outside of his protected class were treated more

favorably. *Compare, e.g.*, *Morgan v. Napolitano*, No. Civ. S-09-09-2649 LKK/DAD, 2010 U.S. Dist. LEXIS 105600, at *14 (E.D Cal. Sept. 23, 2010) (in age discrimination case, noting that "plaintiff has simply listed a number of negative employment actions and made a conclusory statement that these actions are due to age discrimination"; nowhere in his complaint did plaintiff allege that persons "substantially younger than him were subjected to preferential treatment"), *with Cooper v. Cate*, No. 10-cv-899 AWI DLB, 2011 U.S. Dist. LEXIS 134768, at *38 (E.D. Cal. Nov. 15, 2011) (in age discrimination case, denying defendant's motion to dismiss where plaintiff had alleged that defendant "treated employees with [plaintiff's] rank and classification who were substantially younger than she more favorably that it treated her, including but not limited to, not redirecting them to out of class positions"). Nor does he allege a pattern of discrimination on the prohibited bases he alleges. The conclusory claim for discrimination is not plausible and therefore not viable. *See Iqbal*, 129 S. Ct. at 1949 (stating that "[a] claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (emphasis added).

### 3. Hostile Work Environment (Based on Race, Age, and/or Disability)

As noted above, Mr. Knox also asserts a hostile work environment – based on race, age, and/or disability – as a result of the medical leave incident, the health plan incident, and the dress code incident. For a claim for hostile work environment, a plaintiff must establish that the unwelcome conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004) (Title VII); *see also Meirhofer v. Smith's Food & Drug Ctrs., Inc.*, 415 Fed. Appx. 806, 807 (9th Cir. 2011) (proceeding with assumption that hostile work environment claims are cognizable under the ADA and finding that unwelcome conduct was not sufficiently severe or pervasive to rise to the level of a hostile work environment); *Stevens v. County of San Mateo*, 267 Fed. Appx. 684, 685 (9th Cir. 2008) (stating that the Ninth Circuit has "never definitively recognized an age-related hostile work environment claim" but adding that, even if such a claim is cognizable, the severe or pervasive requirement would still apply). Furthermore, a plaintiff must show that he was subjected to the conduct *because of* his protected characteristic – here, race, age,

and/or disability.  *See, e.g.*, *Kang*, 296 F.3d at 817 (with respect to claim for national origin harassment, stating that a plaintiff "must show: (1) that he was subjected to verbal or physical conduct *because of* his national origin; (2) 'that the conduct was unwelcome'; and (3) 'that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment'") (emphasis added).

In the instant case, Mr. Knox's hostile work environment claim – like his disparate treatment claims – fails because he has simply alleged in conclusory terms that the Postal Service engaged in the above conduct because of his race, age, and/or disability.  The complaint does not raise a plausible claim of causation.

Moreover, even if this problem could be overcome, the Court holds that, as a matter of law, the medical leave, health plan, and dress code incidents taken cumulatively are not sufficiently severe or pervasive to alter the conditions of Mr. Knox's employment and create a hostile work environment.

To determine whether conduct was sufficiently severe or pervasive, a court must consider "'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'  In addition, 'the working environment must both subjectively and objectively be perceived as abusive.'"  *Vasquez*, 349 F.3d at 642.

The totality of the circumstances here, as alleged by Mr. Knox, are insufficient to give rise to a hostile work environment.  First, the alleged discriminatory conduct was at best, of limited frequency.  Mr. Knox points to only three incidents which took place over the span of a year.  Second, the alleged discriminatory conduct was far from being severe.  Mr. Knox was not subjected to, *e.g.*, physical or verbal abuse.  While Mr. Knox does appear to have been singled out with respect to the dress code requirement, there is no indication that the dress code requirement was humiliating to Mr. Knox, demeaned him on the basis of a stereotype, or interfered with his ability to perform his work.

Notably, courts have held that a hostile work environment does not exist when presented with facts much more serious than what Mr. Knox has alleged here. For example, in *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990), the Ninth Circuit

> held that no reasonable jury could have found a [racially] hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino.

*Vasquez*, 349 F.3d at 643 (discussing *Sanchez*). In *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2004), the Ninth Circuit concluded that was no sexually "hostile work environment when a supervisor called female employees 'castrating bitches,' 'Madonnas,' or 'Regina' on several occasions in plaintiff's presence; the supervisor called the plaintiff 'Medea'; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor." *Vasquez*, 349 F.3d at 643-44 (discussing *Kortan*). And in *Morgan v. City & County of San Francisco*, No. C-96-3573-VRW, 1998 U.S. Dist. LEXIS 349 (N.D. Cal. Jan. 13, 1998), a court in this district held that there were insufficient allegations of a hostile work environment based on disability where the plaintiff had asserted that a coworker made remarks such as "You don't fit in," that she was subjected to poor performance evaluations, that she was required to tell the receptionist when she left her work station, and that her sick leave was inaccurately reported. *See id.* at *21-22.

In light of the applicable case law, Mr. Knox's claim that the three incidents at issue in this case are sufficient to give rise to a hostile work environment must be rejected. The Court concludes that, as a matter of law, the three incidents do not give rise to a hostile work environment, and thus the Court dismisses the hostile work environment claims with prejudice.

4.  Retaliation

In addition to the disparate treatment and hostile work environment claims, Mr. Knox also asserts a claim for retaliation pursuant to Title VII. Specifically, he claims that the Postal Service gave him a difficult time about his request for medical leave time, failed to disclose the differences between the health plans, and imposed a dress code requirement in retaliation for his having

13

complained to the EEOC about his treatment by the Postal Service and in retaliation for his having filed lawsuits against the Postal Service. *See* Compl. ¶ II (retaliation).

To state a claim for retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004); *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). In the instant case, Mr. Knox's retaliation claim is problematic because he fails to state a plausible claim that there is a causal link between the protected activity (*i.e.*, his complaints to the EEOC and his filing lawsuits in federal court) and the adverse employment action. The mere fact that the medical leave, health plan, and dress code incidents took place after his complaints and/or lawsuits is not sufficient by itself to give rise to an inference of a causal link. He alleges no comments corroborating these incidents to any retaliatory motive. Nor does he allege timing sufficient to raise such an inference.[2]

Furthermore, even if the Court were to assume a causal connection, there is another bar to Mr. Knox's retaliation claim – namely, that, as a matter of law, the Postal Service's conduct does not constitute adverse employment actions for purposes of Title VII retaliation law. The Ninth Circuit has held that, for a Title VII retaliation claim, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). In *Ray*, the Ninth Circuit indicated that lateral transfers, unfavorable job references, and changes in work schedules "are all reasonably likely to deter employees from engaging in protected activity." *Id.* It also indicated that actions that decrease an employee's pay, that decrease the amount of time he has to complete the same amount of work, and that decrease his ability to influence workplace policy are also reasonably likely to deter

---

[2] One way of establishing a causal link is if the adverse employment action takes place "'very close'" in time after the plaintiff has engaged in the protected activity. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'"). In *Breeden*, the Supreme Court stated that a twenty-month gap between the protected activity and adverse employment action suggested "by itself, no causality at all," *id.* at 274, and cited two circuit court cases in which even a three- or four-month gap was deemed insufficient. *See id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir.1997) (3-month period insufficient), and *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir.1992) (4-month period insufficient)).

employees from engaging in protected activity. *See id.* at 1244. Finally, the court held that the creation of a hostile work environment is reasonably likely to deter employees from engaging in protected activity. *See id.* at 1245.

Here, none of the three actions taken by the Postal Service – either taken individually or cumulatively – would be reasonably likely to deter employees from engaging in protected activity. And, as the Court has already held above, the three actions taken together are not sufficiently severe or pervasive to rise to the level of a hostile work environment. Accordingly, Mr. Knox has failed to plead enough facts to state a claim to relief that is plausible on its face, *see Iqbal*, 129 S. Ct. at 1949, and the Court dismisses with prejudice the claim for retaliation.

5. Denial of Veteran's Preferences

Finally, Mr. Knox asserts in his complaint a claim for denial of veteran's preferences. Mr. Knox's is predicated on the Vietnam Era Veterans' Readjustment Assistance Act ("VEVRA"), which requires that a federal agency include in its affirmative action plan a separate specification regarding the hiring, training, and advancement of qualified disabled individuals. *See* Compl. ¶ III (denial of veteran's preferences) (citing 38 U.S.C. § 4214). As alleged in the complaint, the Postal Service failed to comply with the VEVRA by giving him a difficult time about asking for medical leave time, failing to disclose to him the differences between the health plans, and imposing the dress code requirement.

The conduct identified above does not constitute a failure to hire, train, or advance. Nor is there a plausible claim that these incidents are casually related to a failure to harm an affirmative action plan under VEVRA. Finally, it appears that there is no private right of action under § 4214 of the VEVRA. Courts which have addressed the issue have found that there is no private right of action because there is no express waiver of sovereign immunity and courts cannot inferentially incorporate the waiver into the Act. *See Suazo v. Regents of Univ. Of California*, 149 F.3d 1191 (10th Cir. 1998); *Antol v. Perry*, 82 F.3d 1291 (3d Cir. 1996); *Harris v. Adams*, 873 F.2d 929, 932 (6th Cir. 1989); *Fizer-Jordan v. Ziglar*, 242 F. Supp. 2d 474, 477 (E.D. Mich. 2003); *Daniels v. Chertoff*, No. CV 06-2891-PHX-JAT, 2007 WL 1140401 (D. Ariz. April 17, 2007) (no private cause

of action citing *inter alia Antol* and *Suazo*). The Court therefore dismisses the claim for denial of veteran's preferences with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Postal Service's motion to dismiss. Not only has Mr. Knox failed to comply with the pre-filing review requirement imposed by Judge Chesney, but the claims asserted in his complaint are either barred by res judicata or fail to state a claim as a matter of law.

The Clerk of the Court is instructed to enter judgment in accordance with the above and close the file in this case.

Mr. Knox is forewarned that any future failure to comply with Judge Chesney's pre-filing order in *Knox IV* may subject him to sanctions, including being held in contempt of court.

This order disposes of Docket No. 27.

IT IS SO ORDERED.

Dated: March 20, 2012

_____
EDWARD M. CHEN
United States District Judge